**ITT LIGHTING FIXTURES, DIVISION OF ITT CORPORATION, Petitioner-Cross-Respondent,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent-Cross-Petitioner,**

and

**International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), Intervenor.**

Nos. 1248, 1361, Dockets 83–4002, 83–4020.

United States Court of Appeals, Second Circuit.

Argued April 26, 1983.

Decided July 18, 1983.

Rehearing Denied Sept. 20, 1983.

Arnold E. Perl, Memphis, Tenn. (Young & Perl, Memphis, Tenn., Richard M. Kobdish, Memphis, Tenn., on brief), for petitioner-cross-respondent.

Victoria Higman, Atty., N.L.R.B., Washington, D.C. (Howard E. Perlstein, Atty. William A. Lubbers, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Associate Gen. Counsel and Elliott Moore, Deputy Associate Gen. Counsel, Washington, D.C., on brief), for respondent-cross-petitioner.

Eugene G. Eisner, New York City (Jordan Rossen, Gen. Counsel, M. Jay Whitman and Leonard R. Page, Associate Gen. Counsel, Detroit Mich., on brief), for intervenor.

Before NEWMAN and PRATT, Circuit Judges, and METZNER, District Judge.*

METZNER, District Judge:

ITT Lighting Fixtures, Division of ITT Corporation ("Company") petitions the court to review and set aside a Decision and Order of the National Labor Relations Board ("Board") issued on December 16, 1982, finding the petitioner guilty of unfair labor practices and ordering it to bargain with the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, UAW ("Union"). The Board has cross-petitioned for enforcement of its order. The Union has intervened in support of the Board's petition.

This marks the second appearance of this case before this court. The court's prior decision is reported at 658 F.2d 934, and fully details the factual background. The court will assume familiarity with its prior decision and recount only the essentials.

I. *Prior Proceedings*

On December 14, 1978, the Union filed a representation petition with the Board seeking certification as the exclusive bar-

---

\* The Honorable Charles M. Metzner of the United States District Court for the Southern District of New York, sitting by designation.

gaining representative of the Company's production, maintenance and warehouse employees. The Company challenged the inclusion of its groupleaders in the bargaining unit, claiming that they were supervisors within the meaning of Section 2(11) of the National Labor Relations Act, as amended, 29 U.S.C. § 152(11).[1] After a hearing, the Regional Director was unable to determine whether the groupleaders were supervisors, and permitted them to vote by challenged ballot.[2]

The election was held on February 16, 1979, and 362 ballots were cast. Of these, 175 were cast for the Union, 153 were cast against the Union, and 34 were challenged and not counted. Thirty-one of these 34 ballots were cast by groupleaders.

## A. Before the Board

The Company filed timely Objections to Conduct Affecting the Results of the Election, in which it charged that the groupleaders' open and pervasive pro-union activities tainted the election. After an evidentiary hearing the Hearing Officer sustained challenges to the ballots cast by the groupleaders, finding that they were all supervisors. However, he found that they were "minor" supervisors without real authority to affect the employment status of other employees and concluded that their pro-union activity did not taint the election.

The Regional Director reviewed the Hearing Officer's determination, and sustained the Company's challenges to only eleven of the groupleaders' ballots, finding the record inconclusive with respect to the authority of the other groupleaders. He found it unnecessary to determine the status of the remaining groupleaders because their votes would not have affected the outcome of the election. He disposed of the

Company's charge that the groupleaders' pro-union activity tainted the election by concluding that, "assuming arguendo," all 31 were supervisors, the groupleaders were "minor" supervisors without real authority to affect the employment status of other employees.

The Board granted review of the Regional Director's decision solely on the issue of whether the remaining groupleaders were supervisors. It found four additional groupleaders to be supervisors, and left unresolved the status of the remaining 16 because "their ballots cannot affect the election result . . . ." The Board adopted the remaining findings and conclusions of the Regional Director and certified the election.

The Company then refused to bargain with the Union. On September 26, 1980, the Board found the Company to be in violation of Section 8(a)(5) and (1) of the Act, 29 U.S.C. § 158(a)(5) and (1), and ordered the Company to bargain with the Union.

## B. Before This Court

The case then came before this court on the Company's petition for review of the Board's order and the Board's cross-petition for enforcement. After reviewing the administrative proceedings in detail, the court concluded that the Board, and its designated finders of fact, had avoided the crucial issue: whether the pro-union statements and activities of many of the Company's groupleaders impaired the employees' freedom of choice in the election, and affected any of the 175 pro-union votes cast. *ITT Lighting Fixtures, Division of ITT Corporation v. NLRB*, 658 F.2d 934, 940 (2d Cir. 1981).

The court noted that such pro-union activity "'involves the possibility that such

---

1. Section 2(11) of the Act, 29 U.S.C. § 152(11), defines "supervisor" as follows:

    (11) The term "supervisor" means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such

    action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment.

2. The Board denied the Company's request that it review the Regional Director's failure to exclude the groupleaders.

conduct could coerce an employee into supporting the union out of fear of future retaliation ....'" *Id.* at 937, quoting *Turner's Express, Inc.,* 189 N.L.R.B. 106, 107 (1971). The court read the Board's decisions to require, in the absence of direct threats of retaliation, consideration of two factors: (1) the degree of supervisory authority, and (2) the extent, nature and openness of the pro-union activity.

The court pointed out that the Board had adopted the Regional Director's conclusion that the group leaders were "minor" supervisors without the authority to affect the employment status of other employees. There had been no analysis of the difference between "major" and "minor" supervisors and no explanation of what factors were considered in making the distinction. The Regional Director and the Board reached this conclusion about all the group-leaders, despite the fact that they found the evidence insufficient or inconclusive as to whether some of them were supervisors at all.

Thus, the court concluded it could not defer to the Board's ultimate judgment because it was not "supported by essential findings relative to two issues: first, whether, based upon the evidence and findings of fact reached thereon, the groupleaders or any of them who engaged in pro-union activity during the critical period were 'supervisors,' setting forth the criteria for such; and then, if so, whether their pro-union activity could effectively affect the votes of the employees." *Id.* at 940.

The court remanded the case to the Board for further fact-finding and analysis consistent with its opinion and the Board's decisions in the cases of *Delchamps, Inc.,* 210 N.L.R.B. 179 (1974), and *Flint Motor Inn Company, d/b/a Sheraton Motor Inn,* 194 N.L.R.B. 733 (1971). The question of law to be decided was whether the groupleaders' conduct reasonably tended to have

3. The Board had originally directed that the record be reopened and a hearing held before an ALJ for additional findings of fact. Upon motion by the Company the Board rescinded the order reopening the record, agreeing that the existing record was sufficient. *See ITT*

a coercive effect on the employees so that it was likely to have impaired their freedom of choice in the election.

### C. The Board's Supplemental Decision

The Board issued a Supplemental Decision and Order on December 16, 1982,[3] in which it concluded that:

"[T]here was no danger that a prounion group leader bent on retaliation could accomplish that end .... The type of day-to-day supervisory authority possessed by these group leaders simply did not afford the opportunity for effective retaliation against anti-union employees.... Accordingly, we affirm our earlier holding that the prounion statements and activities of the group leaders did not reasonably tend to coerce employees and impair the employees' freedom of choice so as to justify setting the election aside."

The Board found this result to be consistent with its decisions in *Delchamps, supra,* and *Flint Motor Inn, supra,* because the respective supervisors in those cases exercised "major" supervisory authority, such as the authority to hire and discipline.

### II. Discussion

At the outset it should be noted that, contrary to the Board's statement, this court on the prior review did not approve an automatic conclusion that a supervisor's conduct might or might not affect voting based on a distinction between "major" and "minor" supervisory authority. The court said at 941:

"None of these cases [cited by the Hearing Officer] are helpful in shedding light on the meaning of the major supervisor/minor supervisor distinction."

The court was not interested in what labels were used. It wanted to know the criteria developed by the Board for determining whether a supervisor was "major" or "mi-

*Lighting Fixtures, Division of ITT Corporation v. International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW),* 265 N.L.R.B. 188 (1982).

nor," and whether the exercise of a supervisor's authority could have an impact on the laboratory condition for voting. That determination cannot be made, as the Board has done, simply by labeling a supervisor as "minor"; instead there must be consideration of both the extent of the supervisor's authority and the extent of his pro-union activity.

■ The Board is further in error when it states that the law of this case is "that a groupleader is a major supervisor only if he possesses the authority to hire, fire, promote, or issue written warnings on his own volition, or has the authority effectively to recommend such action." Nowhere in this court's prior opinion was such a ruling made.

■ The statute defines "supervisor" as one having authority "to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment." 29 U.S.C. § 152(11). The Board's position is that the distinction between "major" and "minor" is based on the power to recommend *adverse* action because only that power gives the supervisor the retaliatory potential "sufficient to make their extensive involvement in a union campaign coercive upon employees."

It seems clear that in addition to the Board's criteria, which are based solely on the power to retaliate, there should be included the power to reward. This power consists of giving one employee an advantage over another. The authority to grant rewards in the form of transfer, or favorable work assignments, or selection to work overtime to make more money, or excuse from overtime, can be just as coercive in the election process as the authority to issue written warnings.

The Board itself in its decisions in *Delchamps, supra,* and *Flint Motor Inn Company, supra,* regarded the authority to select

employees for overtime and to schedule work as indications of significant authority. In its Supplemental Order, however, the Board did not even mention the authority to select employees for overtime in its discussion of Joan Carson, and placed no importance on it in its discussions of John McNeely, Vernal Massey, Jessie Merriweather, George McGhee, Jeannette Millington, Sammie Williams or Barry Williams, except to note in Merriweather's case that requests to avoid overtime were seldom denied. There was evidence, to which the Board does not allude, that when such requests were denied because a replacement could not be found, it was the groupleader who selected the employees required to work.

■ We turn now to the 15 groupleaders whose status as supervisors is conceded. We are not concerned with whether their votes would have affected the outcome since those ballots were not counted. The result of the election was 175 for the Union and 153 against. A switch of 12 pro-union votes to votes against the union would change the result.

The question is whether these supervisors might have affected the result because of the nature of their authority and the extent of their union activity.

The testimony shows that Massey, McNeely, Millington and Barry Williams supervised a total of 31 employees and possessed more than minimal authority to reward employees. They encouraged employees to support their pro-union position. Several others possessed the authority but merely attended the meetings. Obviously, mere attendance at meetings will not support an inference of coercion.

Joan Carson was a groupleader of 20 employees. She had the authority to select employees for overtime. The Board denigrates her power to recommend adverse action. Carson could issue oral warnings. Her supervisor said he would issue a written warning on her recommendation, but would first check the employee's file to see if Carson had issued an oral warning. The

Board said, "Accordingly, we find that Carson's recommendations of written reprimands were adopted only after independent investigation, and therefore she did not exercise major supervisory authority."

Merely checking a file to ascertain whether the groupleader had issued a prior oral warning cannot possibly be characterized as an "independent investigation" of the complaint. Furthermore, the Board's conclusion is inconsistent with the Act, which includes as supervisors those with power "effectively to recommend" adverse or favorable action, provided only that they exercise independent judgment in making the recommendation. 29 U.S.C. § 152(11). The Act does not preclude supervisory status simply because the recommendation is subject to a superior's investigation.

On this record it has been shown that 51 employees could possibly have been influenced by the pro-union activity of five of the groupleaders. Thus, we cannot say that the election was held in an atmosphere " 'free not only from interference, restraint, or coercion violative of the Act, but also from other elements which prevent or impede a reasoned choice.' " *ITT Lighting Fixtures,* 658 F.2d at 936, quoting *Sewell Manufacturing Company,* 138 N.L.R.B. 66, 70 (1962). A switch of only twelve votes would have changed the result of this election, and therefore it appears that a new election should be held. Since the Board has failed to avail itself of two opportunities to demonstrate the validity of its order, we conclude that the order should now be vacated.

The supplemental order issued on December 16, 1982, and reported at 265 N.L.R.B. 188 is vacated, the cross-petition for enforcement of the supplemental order is denied, and the election, which resulted in certification by the NLRB of the Union as the collective bargaining representative of the Company's employees, is set aside.